IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY C. SALKELD,  )  <br>     Petitioner,  ) <br> )<br> v.  )<br> )<br> FRANKLIN TENNIS, et al.,  )<br>     Respondents.  ) | Civil Action No. 06-42 Erie <br><br> District Judge McLaughlin <br> Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.    REPORT

Petitioner, Tony C. Salkeld is a state prisoner incarcerated at the State Correctional Institution Rockview, located in Bellefonte, Pennsylvania. Currently pending before this Court is his Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. (Doc. 1).

#### A.     Relevant Procedural History

In April 2001, Petitioner was charged by a criminal complaint issued through the Oil City Police Department with one count of rape and one count of sexual assault. The charges stemmed from an incident that occurred between Petitioner and a woman on April 27, 2001. On that date, the woman reported that Petitioner, who had performed that evening at a bar as part of a male dance troupe, pulled her down the bar's basement stairwell and forced her to have sexual intercourse with him.

Petitioner's trial on the rape and sexual assault charges was held in October 2001 in the Court of Common Pleas of Venango County. The Honorable H. William White presided. In Petitioner's defense, his court-appointed counsel, Russell Karl, Esq., contended that the victim

consented to the sexual activity with Petitioner. The jury convicted Petitioner of sexual assault and acquitted him on the rape charge. Judge White sentenced him to a term of 54 to 120 months imprisonment.

Petitioner, through court-appointed counsel D. Shawn White, Esq., appealed his judgment of sentence to the Superior Court of Pennsylvania. In his appeal, he raised the following claims, which were numbered as follows and are recited verbatim:

> 1. The Trial Court Erred In Permitting Violations of Pennsylvania Rules of Discovery 573:
>
>    A. Where the prosecutor provided evidence [a five-page supplemental police report] on the day of the trial;
>
>    B. Where the prosecutor withheld certain evidence [photographs taken by the assistant district attorney of the victim's breasts and a related three-page police report] without turning it over to the defense at any point prior to or during trial;
>
>    C. Whether or not trial counsel was ineffective in failing to seek a continuance of the matter to review the evidence [the five-page supplemental police report] and then file the appropriate Motion to have the evidence suppressed?; and,
>
> 2. Whether or not the trial court erred by denying the appellant the right to confront witnesses and testimony presented by the Commonwealth in their opening statement and through evidence presented during their case in chief?

(Doc. 19, Attach. 5 at 23-27 (bracketed text added)).

On August 26, 2004, the Superior Court issued a Memorandum Order affirming the Petitioner's judgment of sentence. (Doc. 19, Attach. 5 at 1-10). The Superior Court considered each of the issues raised on appeal on the merits and determined that no claim entitled Petitioner to relief. Petitioner did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

Next, on September 23, 2004, Petitioner filed a *pro se* petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. §§ 9541-46. Petitioner raised the following claims:

> 1. Whether the trial court should have colloquied Petitioner on his trial counsel's conflict or had trial counsel, Russell Karl, withdraw his representation of Petitioner;

2

      2.      Whether appellate counsel was ineffective for failing to appeal the trial court's charge to the jury in response to a jury question; and,

      3.      Whether trial counsel provided Petitioner with ineffective assistance for not opposing consideration by the trial court at the sentencing hearing of statements made by Petitioner during a Megan's Law investigation.

(See Doc. 19, Attach. 11 at 2).

On August 29, 2005, Judge White presided over an evidentiary hearing on the PCRA petition. (Doc. 19, Attach. 10). After the hearing, Judge White determined that Petitioner's PCRA claims had no merit and denied relief. (Doc. 19, Attach. 11 at 1-7).

Petitioner appealed to the Superior Court of Pennsylvania in or around the beginning of September 2005. However, in January 2006, he filed a motion to withdraw his appeal. (Doc. 19, Attach. 2 at 2). On January 25, 2006, the Superior Court granted the motion and discontinued Petitioner's appeal. (Doc. 19, Attach. 2 at 1).

In February 2006, he filed with this Court the instant petition for writ of habeas corpus (Doc. 1) and a memorandum in support of the petition (Doc. 2). Therein, he raises the following five claims:

      1.      Trial counsel provided him with ineffective assistance because counsel operated under a conflict of interest;

      2.      The trial court erred in failing to adequately investigate the conflict of interest;

      3.      The trial court failed to procure a valid waiver of Petitioner's constitutional right to conflict-free counsel;

      4.      The trial court's instructions to the jury violated Petitioner's due process rights; and,

      5.      The prosecution violated its obligation under Brady v. Maryland, 373 U.S. 83 (1963), to disclose favorable and material evidence to the defense by withholding photographs of the victim's breasts and related police reports.

(Doc. 2).

### **B.**    **Discussion**

In their Answer, Respondents assert that Petitioner is not entitled to federal habeas review of the claims raised in the instant petition because he did not properly present those claims, or

3

"exhaust" them, before the Pennsylvania courts and, therefore, has now committed insurmountable procedural default.

### 1.     Exhaustion

The doctrine of "exhaustion" requires a state prisoner to first present his federal constitutional claims to the state courts before raising those claims in federal habeas court. Bond v. Fulcomer, 864 F.2d 306 (3d Cir. 1989). Although the requirement of exhaustion is not jurisdictional, it "should be strictly adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." Landano v. Rafferty, 897 F.2d 661, 669 (1990). The requirement of exhaustion also recognizes the duty, and ability, of the state courts to uphold federal law, and serves the interest of ensuring a fully developed record in the state court. Id.

To comply with the exhaustion requirement, a state prisoner first must have fairly presented his federal constitutional claims to the state courts on direct appeal, collateral review, or some other available procedures for judicial review. See e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, the petitioner must appeal any denial of those claims through the state's "established appellate review process" before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999). In Pennsylvania, this requirement means that a petitioner in non-capital case must present every claim raised in his or her federal petition to both the Common Pleas Court and the Superior Court either on direct appeal, during PCRA proceedings, or through some other available procedure for review. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).[1]

---

[1]

On May 9, 2000, the Supreme Court of Pennsylvania issued Order No. 218, which held that: "[W]e hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be

(continued...)

4

All of the federal constitutional claims that Petitioner raises in the instant petitioner were either never raised before the state courts or were raised and abandoned at some point by Petitioner.[2] His act of withdrawing his appeal from Judge White's denial of his PCRA petition has prevented any claim contained within that appeal from being properly exhausted. O'Sullivan, 526 U.S. at 843.

Though, generally, a district court should require that a state prisoner return to state court to exhaust those claims that are not exhausted, see Crews v. Horn, 360 F.3d 146 (3d Cir. 2004),

---

[1](...continued)
deemed to have exhausted all available state remedies respecting a claim of error." In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 (Pa. May 9, 2000). The Court of Appeals for the Third Circuit determined in Lambert that: "Order No. 218 serves to remove review of criminal and collateral appeals from the 'normal' and 'established' appellate review procedure in Pennsylvania….Order No. 218…makes the Pennsylvania Supreme Court's discretionary review system 'unavailable.' Consequently petitioners need not seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a 'full opportunity to resolve any constitutional claims.'" 387 F.3d at 233-34 (internal citations omitted).

[2]

In Claim 5, Petitioner contends that the prosecution suppressed a five-page police report, a three-page police report, and photographs of the victim's breasts in violation of its obligation to disclose material evidence to the defense, as set forth in Brady v. Maryland, 376 U.S. 83 (1963). Respondents contend, and Petitioner does not contest, that although he raised issues with regard to the prosecution's handling of those police reports and photographs on direct appeal, those challenges were raised only in the context of state law claims of error. As a result, they argue, Petitioner failed to exhaust his Brady claim.

Respondents are correct that Petitioner did not exhaust his Brady claim on direct appeal. To exhaust state remedies, a petitioner must have presented the *legal* and factual basis of his federal claims to the state court. To this effect, the petitioner's "state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts in his federal habeas petition." Doctor v. Alters, 96 F.3d 675, 678 (3d Cir.1996). Although the petitioner need not cite "'book and verse' of the federal constitution" to put the state court on notice that he is asserting a constitutional claim, the petitioner "must have communicated to the state courts in some way that [he was] asserting a claim predicated on federal law." McCandess v. Vaughn, 172 F.3d 255, 260 (3d Cir.1999). Here, Petitioner did not raise a federal constitutional claim on direct appeal. He did not cite to Brady, the federal constitution, or state cases that relied upon Brady or the federal constitution. Nor did he use words or arguments in his brief that would indicate that a Brady claim was being raised. Instead, on direct appeal Petitioner solely argued that the prosecution's handling of the reports and photographs violated Rule 573(B) of the Pennsylvania Rules of Civil Procedure.

The Superior Court rejected those claims on the merits, holding: (1) that the prosecution's disclosure of the five-page report the morning of the first day of trial did not entitle Petitioner to relief because he failed to demonstrate that the prosecution's alleged violation of Rule 573(B)(1)(a) prejudiced him; and (2) that the prosecution did not violate the discovery rules with regard to the three-page report and the photographs because those documents were disclosed to the defense well in advance of the trial. (Doc. 19, Attach. 5 at 3-7). Thus, even if the Brady claim set forth at Claim 5 was exhausted (which it is not), and this Court was able to review it on the merits, the claim would be denied for the reasons set forth in the Superior Court's opinion. See 28 U.S.C. § 2254(d)(1)-(2), (e)(1).

5

the district court may "excuse" a petitioner's failure to exhaust as "futile" if it is clear that the habeas petitioner's claims are now barred from review under state law. Gray v. Netherland, 518 U.S. 152, 161 (1996). Futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims."[3] Lines v. Larkin, 208 F.3d 153, 164 (3d Cir. 2000).

Here, requiring Petitioner to exhaust the claims contained in the instant petition would be "futile" because litigating those claims in state court is now foreclosed under Pennsylvania law. There is no indication that the Superior Court would permit him to reopen the PCRA appeal that he voluntarily withdrew more than one year ago. Thus, it appears that the only avenue available to Petitioner in order to raise the claims at issue is through another PCRA petition filed with the Common Pleas Court. However, the PCRA expressly limits the availability of relief and requires, with few exceptions not applicable here, that a post-conviction petition be filed within one year of the date a judgment becomes final. 42 PA. CONS. STAT. § 9545(b)(1). Since more than one year has passed since Petitioner's judgment of sentence became final, any PCRA petition that he might now attempt to file would be untimely and non-reviewable in the Pennsylvania courts. Additionally, if Petitioner returned to state court to attempt to litigate the claims at issue in another PCRA petition, the state court likely would determine that Petitioner waived the claims. See 42 PA.CONS.STAT. § 9544(b). Accordingly, it would be "futile" for Petitioner to return to state court and attempt to exhaust the claims contained in the instant federal habeas petition.

### 2. **Procedural Default**

A finding by a district court that exhaustion is "futile" often results, as it does here, in a finding that the claims at issue are barred from federal habeas review. The Court of Appeals for the Third Circuit has repeatedly directed that "claims deemed exhausted because of a state

---

[3] Courts so hold because the exhaustion "requirement ... refers only to remedies still available at the time of the federal petition." Gray, 518 U.S. at 161 (internal quotations and citations omitted).

procedural rule are deemed procedurally defaulted." Lines, 208 F.3d at 160; Werts v. Vaughan, 228 F.3d 178, 192 (3d Cir. 2000). The doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 730 (1991), and it bars federal habeas review whenever the petitioner has failed to comply with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). The doctrine essentially provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule, and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.

Petitioner concedes that his claims are procedurally defaulted. He argues, however, that the default of his claims may be excused under the "miscarriage of justice" doctrine.[4] Under this doctrine, a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995); House v. Bell, ___ U.S. ___, 126 S.Ct. 2064, 2076-78 (2006); Wright v. Vaughn, ___ F.3d ___, 2006 WL 3780403, *5-6 (3rd Cir. Dec. 26, 2006); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). Importantly, the evidence that the petitioner must present to establish "actual innocence," must be "*new* reliable evidence ... that was not presented at trial." Id. at 324 (emphasis added). The petitioner must also demonstrate "that it is more likely than not that no reasonable juror would have convicted [petitioner] in light of [the] new evidence presented in [the] habeas petition." Id. at 327; House, 126 S.Ct. at 2077; Wright, 2006 WL 3780403, *6; Hubbard, 373 F.3d at 340-41. This is a stronger showing than is

---

[4] A procedural default may also be excused if a petitioner demonstrates "cause" for the default and resulting prejudice. See e.g. Lines, 208 F.3d at 165. Petitioner does not contend his default should be excused for this reason, and he points to no evidence and makes no allegation concerning cause for the default or prejudice stemming therefrom, as is his burden. Id.

required to establish prejudice on a constitutional error and is found only in a truly "extraordinary" case. Id. at 321-327.

In the instant case, although Petitioner contends that he is actually innocent, he does not direct this Court to any evidence that satisfies the Schlup standard and excuses his default. His "actual innocence" claim is based upon his insistence that his trial counsel, Russell Karl, Esq., labored under a conflict of interest because he had previously represented the victim's boyfriend, Russell DeLucia, in an unrelated criminal matter. He argues that that representation prevented Attorney Karl from making what Petitioner contends was his best defense at trial: that the boyfriend's propensity for violence resulted in the victim trumping up charges against Petitioner.

Petitioner's allegations of conflict of interest do not bear on Petitioner's actual innocence, but relate to whether his trial was "fair" because of counsel's purported conflict of interest and/or ineffective assistance. Such allegations do not satisfy the Schlup standard. Indeed, the "actual innocence" doctrine ordinarily requires new and reliable physical, scientific, or eyewitness evidence that would persuade any rational juror that a petitioner *could not have committed the crime for which he was convicted.* House, 126 S.Ct. at 2076-86; Hubbard, 378 F.3d at 339-40. Petitioner's allegations regarding Attorney Karl's conflict, even if credited, do not demonstrate that he could not have committed the sexual assault.

Moreover, the evidence that Petitioner relies upon to demonstrate that Attorney Karl had a conflict of interest is not new. Petitioner relied upon this evidence to argue before the PCRA court that counsel labored under a conflict of interest and provided him with ineffective assistance of counsel, but he abandoned those claims on appeal to the Superior Court.

The only other arguably "new" evidence that Petitioner relies upon are documents from Maryland's Division of Parole and Probation and from Maryland courts that show that DeLucia was arrested for assaulting the victim in March 2002 (more than a year after Petitioner's sexual assault). (Doc. 2, Ex. 14). These documents are not new, either. Petitioner presented them in support of his PCRA petition. Sustaining the Commonwealth's objection, Judge White refused to admit those records at the PCRA hearing. (Doc. 9, Attach. 10 at 119-21). Petitioner could have challenged Judge White's evidentiary ruling on appeal to the Superior Court and continued

8

to press for PCRA relief based, *inter alia*, on these documents, but he abandoned his appeal. Nor do the documents from Maryland demonstrate that Petitioner is "actually innocent" of the sexual assault of the victim. Those documents refer to an incident between the victim and DeLucia that happened *almost one year after* the incident between Petitioner and the victim. Thus, they are irrelevant to Petitioner's case (which is why Judge White refused to admit them at the PCRA hearing) and do no satisfy the Schlup standard.

Accordingly, because the claims Petitioner raises in his petition for writ of habeas corpus are procedurally defaulted and the miscarriage of justice exception is not applicable to excuse his default, his claims for habeas corpus relief should be dismissed with prejudice.

### C.     **Certificate of Appealability**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying this standard here, jurists of reason would not find it debatable whether the claims raised in Petitioner's Petition for Writ of Habeas Corpus are procedurally defaulted. Accordingly, a certificate of appealability should be denied.

### III.    **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the instant petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated:  January 30, 2007